IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


PPG INDUSTRIES, INC.,

      Plaintiff,

v.                                          Civil Action No. 5:07CV85
                                                    (STAMP)
INTERNATIONAL CHEMICAL WORKERS
UNION COUNCIL OF THE UNITED FOOD
AND COMMERCIAL WORKERS and
INTERNATIONAL CHEMICAL WORKERS
COUNCIL OF THE UNITED FOOD AND
COMMERCIAL WORKERS, LOCAL UNION
No. 45C,

      Defendants.


**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AND VACATING ARBITRATOR'S AWARD**

I.   Procedural History

The plaintiff in the above-styled civil action, PPG Industries, Inc. ("PPG"), filed a complaint in this Court, seeking vacatur of an arbitration award in favor of the defendants, International Chemical Workers Union Council of the United Food and Commercial Workers and International Chemical Workers Council of the United Food and Commercial Workers, Local Union No. 45C (collectively, "the Union").  This matter currently comes before this Court on the parties' cross-motions for summary judgment. These motions have been fully briefed and are now ripe for review. For the reasons set forth below, this Court finds that the plaintiff's motion for summary judgment should be granted, that the

defendants' motion for summary judgment should be denied, and that the arbitrator's award should be vacated.

## II.  Facts

The facts giving rise to this action are not in dispute.  The parties are signatories to a collective bargaining agreement ("the CBA").  The collective bargaining agreement provides for bonus payments under a Variable Pay Plan ("VPP").  Article XXV of the CBA provides that PPG:

> will make available the Chlor-Alkali & Derivatives Variable Pay Plan to all regular employees during the term of this Labor Agreement.  The terms and conditions of the Variable Pay Plan are specified in the plan document, a copy of which has been given to the Union. The Chlor-Alkali & Derivatives Variable Pay Plan document is, by reference, incorporated as part of this Agreement and will govern the operation of the Variable Pay Plan in all cases.  The Union agrees that any changes to the terms of the Chlor-Alkali & Derivatives Variable Pay Plan including, but not limited to, increases or decreases to the level of award and/or right to terminate the Variable Pay Plan, are the prerogative of management and not subject to negotiations during the term of the Labor Agreement.

(Joint Ex. 1, 73.)

To be eligible for the VPP bonus, an employee must meet the following conditions: (1) have been "Actively Employed" for at least 1,040 hours during the Plan Year; (2) have been "Actively Employed" on the last workday of the Plan Year--or on an approved leave of absence or layoff--or have been terminated during the Plan Year under terms defining an eligible termination; and (3) have been "physically present, at work, on his/her job at least one day

during the Plan Year." (Joint Ex. 3 Sec. II.) The 2005 version of the VPP defines "Actively Employed" as "actively at work; on vacation; or on FMLA[1] or Military leave of absence." (Joint Ex. 3 Sec. I.) The term "Actively Employed" excludes "overtime hours, leaves of absence other than FMLA and/or Military, [and] layoffs." (Joint Ex. 3 Sec. I.) The term "Plan Year" is defined as "the calendar year." (Joint Ex. 3 Sec. I.) The term "last workday" is not defined.

In September 2005, the parties' CBA expired, at which time most of the bargaining-unit employees represented by the Union implemented a strike. The strike extended through the end of calendar year 2005, until mid-February 2006, when the parties reached a new CBA and the Union ratified it. Because the strike encompassed the end of the calendar year, PPG deemed the striking workers ineligible for the VPP bonus. In PPG's view, the workers were not "Actively Employed" on the last workday of the Plan Year.

Subsequently, the Union filed a timely grievance complaining that PPG's decision to deny the VPP awards to the striking workers violated the CBA. PPG denied the grievance. Pursuant to Article VII of the CBA, the dispute was ultimately submitted for binding arbitration.

---

[1]Family and Medical Leave Act

Article VII of the CBA provides:

> Only grievances involving alleged violations with respect to the application or interpretation of the terms of this agreement may be submitted by either party to arbitration. The Arbitrator shall have no authority to add to, take away from, change or modify any of the terms of this Agreement nor shall he have any authority in the making of a new agreement.

(Joint Ex. 1, 10.)

In the arbitration proceedings, the Union argued that once the VPP goals are met, any employees who have worked the requisite 1,040 hours and otherwise meet the criteria set forth in the VPP, should receive the bonus payments. The Union contends that this standard should apply to the striking workers regardless of whether their last scheduled workday fell on or before the last workday of the Plan Year. According to the Union, even though the striking employees' last scheduled workday of the year occurred in September 2005, they nonetheless met the VPP eligibility requirements, including having been "Actively Employed" on the last workday of the Plan Year, because they worked their last scheduled workday in 2005. The Union further argued that PPG had discriminated against the striking workers, in violation of the CBA and the "Return to Work Understanding," dated February 9, 2006, by denying them the VPP bonus. The "Return to Work Understanding" states that the parties "agree neither party will engage in any form of discrimination or reprisals against any employees because of the exercise of their legal right to strike or refrain from striking."

4

(Union Ex. 9, 2.) The Union requested that the arbitrator uphold the grievance and direct payment of the VPP bonus with interest and overtime.

According to PPG, the striking employees were disqualified from receiving the VPP bonus because they were not "Actively Employed" on the last date of the Plan Year under the definition of that term set forth in the VPP. Further, PPG argued that because the definition of "Actively Employed" specifically listed several circumstances which constitute active employment--none of which was a strike--then a strike is necessarily excluded from the meaning of "Actively Employed" under the exclusion rule.

PPG also contended that extrinsic evidence should not be considered in interpreting the parties' intent. Therefore, in PPG's view, statements made by the Manager of Labor Relations for PPG's Natrium plant at a December 12, 1995 meeting indicating that the terms in question could be ambiguous should not be construed as support for the Union's position that striking employees were "Actively Employed" for purposes of receiving VPP payments.

Finally, PPG denied any discriminatory motive in refusing to pay otherwise qualifying striking employees a VPP bonus. As support, they observed that striking employees who otherwise qualified for the VPP payments in 2006 received those payments, even though they had been on strike through mid-February 2006.

In a decision dated June 14, 2007, the arbitrator determined that the striking employees were not made ineligible for the VPP bonus by virtue of being on strike on the last day of the Plan Year and that the Union's grievance should be upheld. In reaching this conclusion, the arbitrator appears to have determined the term "Actively Employed" to be ambiguous.

First, the arbitrator observed that although the term "Actively Employed" is defined in the VPP as being "actively at work; on vacation; or on FMLA or Military leave of absence," and "on strike" does not appear in that list, the definition of "Actively Employed" also specifically excludes "overtime hours, leaves of absence other than FMLA and/Military, [and] layoffs," and "on strike" does not appear in that list either. Thus, the arbitrator queried whether the rule of exclusion properly applies to the list identifying those circumstances which qualify for "Actively Employed" or those circumstances which do not. Stated differently, the arbitrator appears to have concluded that the complete absence of the term "on strike" from the definition of "Actively Employed"--whether as a designated inclusion or a specified exclusion--suggests that the definition of "Actively Employed" is ambiguous insofar as it may or may not apply to striking employees. Second, the arbitrator observed a rule of construction which is sometimes applied to a seemingly unambiguous term and which states that an interpretation of such a term

resulting in an absurd outcome should yield to an alternative interpretation which would result in a reasonable outcome. In his analysis, the arbitrator noted that applying PPG's interpretation of "Actively Employed" to the circumstances of this case might not result in an absurd outcome but that under different circumstances, such as where a strike begins in late December and ends in early January, an absurd result might flow from application of PPG's interpretation. Finally, the arbitrator refers to the rule of construction that any ambiguity of a contractual term be construed against the drafter. The arbitrator found that in this case, PPG prepared the VPP. Further, he found that "[t]here was no negotiation and there was no authority to negotiate" the terms of the VPP. (Pl.'s Compl. Ex. E.) These reasons suggest that the arbitrator found the term "Actively Employed" ambiguous.

In light of the ambiguity he perceived in the term "Actively Employed," the arbitrator considered the comments of PPG's Manager of Labor Relations for the Natrium plant, Mr. Hubert, at a December 12, 1995 meeting where he answered questions about the VPP and sought to clarify the meaning of the term "last workday" in relation to the term "Actively Employed." Mr. Hubert stated that "last workday" was intended to mean "last regularly scheduled workday" rather than "last scheduled workday." He went on to say, "If they are not employed[,] they are terminated." Based upon Mr. Hubert's comments at the December 12, 1995 meeting, the arbitrator

stated, "one could conclude that employees were not made ineligible by virtue of being on strike on 12/31/05," even though Mr. Hubert offered a different intended meaning at the arbitration hearing. (Pl.'s Compl. Ex. E.)

In sum, the arbitrator determined that the bargaining-unit employees did not forfeit their entitlement to VPP payments by going on strike at the termination of the CBA and remaining on strike beyond the end of the 2005 Plan Year for the following reasons: (1) PPG, as the drafter of the VPP, had failed to specifically exclude "being on strike" from the definition of "Actively Employed" when it had explicitly excluded other circumstances; (2) exclusion of the term "on strike" from the definition could lead to absurd results in other circumstances not present in this case; and (3) the extrinsic evidence suggested nothing to indicate that the parties intended striking employees to be disqualified from VPP payments. As to this last point, the arbitrator noted that "the explanations given to the Union in the 1995 discussions were, if not misleading, lacking in a satisfactory or clear definition of eligibility for payment based upon the issue in this case." (Pl.'s Compl. Ex. E.)

Accordingly, the arbitrator ordered PPG to pay the VPP bonus to any grievants otherwise entitled to receive them. The arbitrator declined, however, to find discriminatory or retaliatory

motive in PPG's decision to deny the striking workers VPP payment
for the 2005 Plan Year.

On July 3, 2007, PPG brought this action, seeking an order
vacating the arbitrator's award.  The parties' cross-motions for
summary judgment, and responses thereto, then followed.

### III.  Applicable Law

#### A.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment
should be granted if "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law."  The party seeking summary judgment bears the
initial burden of showing the absence of any genuine issues of
material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23
(1986).  "The burden then shifts to the nonmoving party to come
forward with facts sufficient to create a triable issue of fact."
Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir.
1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

"[A] party opposing a properly supported motion for summary
judgment may not rest upon the mere allegations or denials of his
pleading, but . . . must set forth specific facts showing that
there is a genuine issue for trial."  Anderson, 477 U.S. at 256.

The Court must perform a threshold inquiry to determine whether a trial is needed -- whether, in other words, "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.") (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.   Review of Arbitration Award

This Court recognizes the well-known rule that federal courts should refuse to review the merits of an arbitration award under a collective bargaining agreement. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960); United

Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S.

574 (1960); United Steelworkers of America v. American Mfg. Co.,

363 U.S. 564 (1960). "[S]o far as the arbitrator's decision

concerns construction of the contract, the courts have no business

overruling him because their interpretation of the contract is

different from his." Enterprise Wheel, 363 U.S. at 599.

Accordingly, federal courts apply the following rule:

> [T]he arbitrator's award settling a dispute with respect
> to the interpretation or application of a labor agreement
> must draw its essence from the contract and cannot simply
> reflect the arbitrator's own notions of industrial
> justice. But as long as the arbitrator is even arguably
> construing or applying the contract and acting within the
> scope of his authority, that a court is convinced he
> committed serious error does not suffice to overturn his
> decision.

United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 38 (1987)

(emphasis added). Additionally, as the United States Court of

Appeals for the Fourth Circuit has held, an arbitration award is

enforceable even if the award resulted from a misinterpretation of

law, faulty legal reasoning or erroneous legal conclusion, and may

be reversed only when arbitrators understand and correctly state

the law, but proceed to disregard it. Upshur Coals Corp. v. United

Mine Workers of America, Dist. 31, 933 F.2d 225, 229 (4th Cir.

1991).

IV.  Discussion

A.  The Parties' Contentions

1.  PPG's Motion for Summary Judgment

In its motion for summary judgment, PPG contends that this
Court should vacate the arbitrator's award because the arbitrator
exceeded his authority by finding that, under the provisions of the
VPP, the term "Actively Employed" applied to employees who were on
strike during the relevant period, even though the clear and
unambiguous language of the contract dictated otherwise.  PPG
argues that the arbitrator's award did not draw its essence from
the governing collective bargaining agreement because he ignored
the plain language of the agreement; he improperly added a new term
to the labor contract; he improperly considered extrinsic evidence
in construing the clear and unambiguous language of the contract;
and he imposed his own notions of industrial fairness.

In response, the Union argues that PPG's focus on the term
"Actively Employed" is misplaced because the ambiguity of the
contract arises from the term "last workday of the Plan year"--
specifically whether the parties intended the last workday of the
Plan year to mean an employee's last scheduled workday or the last
workday of the calendar year.  Consequently, the Union argues, the
arbitrator properly filled the gaps; he did not ignore the language
of the variable pay plan as understood by the parties when they
agreed to incorporate the variable pay benefits into the collective

12

bargaining agreement; he did not improperly add a new term to the contractual agreement; he did not improperly consider extrinsic evidence as an aid to construction when issuing his award; and he did not impose his own particular notion of fairness and equity.

2.    The Union's Motion for Summary Judgment

The Union contends that when the VPP was incorporated into the CBA, the parties failed to specify whether "last workday of the Plan year" meant an employee's last scheduled workday or the last workday of the calendar year.  However, because the employees at the Natrium plant work odd shifts--sometimes with several weeks off at a time--the Union states that it engaged in discussions with PPG in 1995 before incorporating the VPP into the agreement and received assurances that "last workday" meant "last scheduled workday."  The Union argues, therefore, that the proper focus is not on the meaning of the term "Actively Employed" and the associated definitions provided for that term in the VPP, as PPG urges; rather, the proper focus is on the meaning of "last workday of the Plan year," which, the Union claims, is ambiguous and therefore subject to the application of extrinsic evidence as an aid to construction.

Additionally, the Union claims that it negotiated for a non-discrimination clause in the strike settlement agreement reached between the parties in 2006 to prevent PPG from refusing to pay benefits because the employees had been on strike.  The Union

13

argues that PPG has violated the non-discrimination provision because PPG has granted VPP benefits to a number of employees who do not qualify under the strict definition that PPG claims disallow striking employees from receiving the pay benefits.  The Union argues that the 1995 negotiations, taken together with the 2006 strike settlement agreement and the disparate application by PPG of the VPP, support the arbitrator's conclusion that the striking employees are eligible for the VPP benefits.

According to the Union, the arbitrator did his job when he construed the CBA, and under the law of the Fourth Circuit, the question is not whether he did his job well, correctly, or reasonably, but whether he did it.

In its response to the Union's motion for summary judgment, PPG maintains that the arbitrator did not simply construe the contract between the parties but that he decided the dispute based upon his own sense of fairness by adding a term to the eligibility requirements for payment under the VPP.  PPG contends that the arbitrator did not find that it had discriminated against Union employees when it denied them pay under the VPP.  PPG also contends that the arbitrator was not doing his job when he ignored the plain language of the contract in favor of extrinsic evidence that PPG contends did not relate to the eligibility of striking workers. PPG argues, further, that the Union's contentions that all of the striking workers worked their last scheduled work day is irrelevant

because it ignores the language of the VPP (as incorporated into the CBA) and is factually wrong because the employees just decided to stop coming to work even though they were scheduled to work beyond the day the strike began. PPG supports its contention that the arbitrator applied his own values to the decision to grant an award in the defendant's favor by arguing that the arbitrator misapplied the exclusion principle of construction to fashion an equitable remedy instead of interpreting the language of the contract.

B.    Review of the Arbitrator's Award

["F]or matters within the scope of an arbitration clause, the arbitrator's award is final and binding. A court does not 'sit to hear claims of factual or legal error by an arbitrator,' and must defer to the arbitrator 'as long as the arbitrator is even arguably construing or applying the contract.'" Champion Intern. Corp. v. United Paperworks Intern. Union, AFL-CIO, et al., 168 F.3d 725, 728 (4th Cir. 1999) (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)). The courts' role is to determine "only whether the arbitrator did his job--not whether he did it well, correctly, or reasonably, but simply whether he did it." Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996) (citing Remmey v. PaineWebber, Inc., 32 F.3d 143, 146 (4th Cir. 1994)). However, "[A] court must vacate an arbitrator's award if it violates clearly established

15

public policy, fails to draw its essence from the collective bargaining agreement, or reflects merely the arbitrator's personal notions of right and wrong." Champion Intern. Corp. v. United Paperworks Intern. Union, AFL-CIO, 168 F.3d 725, 729 (4th Cir. 1999) (citing Mountaineer Gas, 76 F.3d at 608).

Given the parties' arguments before this Court, the pivotal question in this case is whether the arbitrator's decision draws its essence from the collective bargaining agreement. An arbitrator's decision draws its essence from the collective bargaining agreement "if in any rational way the arbitrator's interpretation can be derived from that agreement as viewed in the light of its language, its context, and any other indicia of the parties' intention . . . absent any evidence of fraud, deceit or breach of the duty of fair representation . . . ." Crigger v. Allied Chem. Corp., 367 F. Supp. 1133, 1139 (S.D. W. Va. 1973).

In this case, the record before this Court does not support a conclusion that the arbitrator--in viewing the VPP, as incorporated by the CBA, in the light of its language and context--drew his decision from the essence of the contract. The CBA permits the arbitrator to interpret the terms of the CBA, but it expressly forbids him from adding to, removing, changing, or modifying any of its terms. (Joint Ex. 1.) Although the terms "Actively Employed" and "last workday of the Plan Year" may arguably be ambiguous, and under the CBA the arbitrator has authority to construe those terms,

nothing in the VPP, the CBA, or the parties' 1995 discussions concerning the VPP indicates that the parties intended to include or exclude, or even considered including or excluding, striking employees as falling within the meaning of "Actively Employed." Indeed, the arbitrator observed that the issue "was never discussed, or in all probability contemplated, by the parties during meetings regarding the [VPP]." (Pl.'s Compl. Ex. E.) If the parties never contemplated whether to include or exclude "being on strike" under the meaning of "Actively Employed," then they could not have had any intent relating to the eligibility of striking employees for VPP payments. In the absence of any evidence that the parties intended to include or exclude striking employees under the definition of "Actively Employed," any ambiguity which may exist in the definition of that term does not extend to whether it includes being on strike. By finding that being on strike does not make otherwise eligible employees ineligible for VPP bonuses, the arbitrator effectively changed the term "Actively Employed" by adding "on strike" to its list of inclusions, in violation of the restrictions imposed upon his authority by the CBA.

Similarly, this Court must reject the Union's argument that the striking employees were eligible for the VPP bonus on the basis that they worked their last scheduled workday of the Plan Year. Such an interpretation would effectively change the meaning of

17

"last workday of the Plan year" to "last workday during the Plan Year that the employee chooses to work." Had the arbitrator applied such an interpretation, he would have exceeded his authority under the CBA by changing or modifying that term.

In light of the foregoing, this Court finds that the arbitrator did not draw his decision from the essence of the contract. Accordingly, PPG's motion for summary judgment should be granted and the Union's motion for summary judgment should be denied.

## V.   Conclusion

For the reasons set forth above, it is ORDERED that the motion for summary judgment by the plaintiff, PPG Industries, Inc. be GRANTED. It is further ORDERED that the motion for summary judgment by the defendants, International Chemical Workers Union Council of the United Food and Commercial Workers and International Chemical Workers Union Council of the United Food and Commercial Workers, Local No.45C, be DENIED. Accordingly, the arbitrator's award is hereby VACATED. It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal

Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment

on this matter.

    DATED:    September 30, 2008


<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE